PUCKETT *v.* GRIFFITH *et al.*

(*Nashville.*    December Term, 1913.)

1. **JUSTICES OF THE PEACE.**    Execution.    Entry of stay. Power to modify.

An attempt made by a justice of the peace, after expiration of the three-day period allowed by law, to change the entry of a stay of execution so as to make it applicable on its face only to the principal judgment debtor was ineffective. (*Post, p.* 568.)

Cases cited and approved:    Mayfield v. McLary, 40 Tenn., 160; Apperson v. Smith, 37 Tenn., 372; Howard v. Brownlow, 36 Tenn., 548.

2. **JUSTICES OF THE PEACE.**    Execution.    Entry of stay. Effect as judgment.

Entry of a stay of execution by a justice of the peace was equivalent to a confessed judgment against the stayor. (*Post, p.* 568.)

Cases cited and approved:    Roberts v. Cross, 33 Tenn., 233; Apperson v. Smith, 37 Tenn., 372.

3. **JUSTICES OF THE PEACE.**    Execution.    Stay.    Liability of stayor.

Under Shannon's Code, sec. 4788, authorizing a justice of the peace to enter security for stay of execution, and section 4789 providing that one who becomes stayor at the instance of the principal defendant is liable before a surety, a person who caused his name to be entered broadly as stayor was liable before the sureties, where the stay as to them was unauthorized and promptly disaffirmed by them, though he was induced to become stayor by the principal debtor's false representation that the sureties desired that the judgment be stayed. (*Post, p.* 530.)

Code cited and construed:    Secs. 4788, 4789 (S.).

Cases cited and approved:    Chaffin v. Campbell, 36 Tenn., 184; Holt v. Davis, 40 Tenn., 629; Higg v. Landrum, 41 Tenn., 81; Gant v. White, 62 Tenn., 196.

Puckett v. Griffith.

4. **JUSTICES OF THE PEACE.** Entry of stay. Operation and effect.

Where the name of a stayor is entered by a justice of the peace without any qualification, *prima facie* he is stayor for both the principal judgment debtor and his sureties, but he may be shown to be in reality the stayor of the principal only. (*Post, p. 571.*)

Case cited and approved: Woodward v. Wilton, 54 Tenn., 50.

5. **JUDGMENT.** Setting aside. Grounds.

To justify a court of equity in setting aside a judgment at law, the complainant must prove not only fraud but that it was unmixed by any fault attributable to him, such as neglect or inattention. (*Post, pp. 571, 572.*)

Cases cited and approved: McDowell v. Morrel, 73 Tenn., 279; Maddox v. Apperson, 82 Tenn., 596.

6. **JUDGMENT.** Bill to set aside. Laches.

Where it appeared that the complainant, in a suit to set aside, for fraud in procurement, the entry of his name as stayor of a judgment rendered by a justice of the peace, made no effort to ascertain from the sureties of the principal debtor whether they desired him to become stayor, and that the sureties promptly disaffirmed the stay, complainant, by reason of his inattention, was not entitled to have the judgment set aside. (*Post, p. 572.*)

---

FROM DEKALB

---

Appeal from the Chancery Court of DeKalb County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.— A. H. ROBERTS, Chancellor.

DRAKE & TURNER, for complainant.

T. W. WADE, for defendant Griffith.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

G. C. Puckett filed a bill of complaint seeking to have set aside, for fraud in procurement, the entry of his name as stayer of a judgment rendered by a justice of the peace. This judgment was based on a note on which one Cantrell was principal and Griffith and Allen were sureties. Within the time allowed by law, Cantrell, the principal judgment debtor, went to complainant Puckett and requested him to become stayor of that judgment. Puckett declined to stay for Cantrell alone, whereupon Cantrell told Puckett that the two sureties, as well as himself, desired that the judgment be stayed. Puckett, knowing that the sureties were solvent, agreed to stay the judgment for all the defendants and instructed the justice to so enter his name as stayor. The justice entered his name, "G. C. Puckett, stayor."

Promptly on learning that Puckett had attempted to stay the judgment for them, as well as their principal, the sureties sent word to the justice that they did not want the judgment stayed in their behalf, and the justice, after the lapse of the three days allowed for stay, undertook to change and add to his entry on the record so as to make it show, "G. C. Puckett, stayor for Cantrell." This change was without the knowl-

edge or consent of. Puckett, and he did not learn of it until after the eight months' stay period had expired.

The sureties, Griffith and Allen, had not authorized or requested Puckett to become stayor for them; and the latter made no inquiry of them as to their real desires in that regard.

The sureties were compelled to pay the judgment, and, deeming the stayor to be primarily liable, they brought suit at law against Puckett to recover; and this action was enjoined by fiat issued under the bill of complaint, which bill also, as noted, sought to have declared null the judgment of stay.

The attempt of the justice of the peace to change the entry of stay was ineffectual because of lack of power on his part. The period of three days allowed by law for authorized action in that respect had expired, and the words added by him, "for Cantrell," must be treated as nonexistent. *Mayfield* v. *McLary*, 3 Head, 160; *Apperson* v. *Smith*, 5 Sneed, 372; *Howard* v. *Brownlow*, 4 Sneed, 548.

The original entry of stay, "G. C. Puckett, stayor," was in legal effect the equivalent of a confessed judgment against the stayor. *Roberts* v. *Cross*, 1 Sneed, 233; *Apperson* v. *Smith*, supra.

By statute it is provided that: "It is not lawful for the justice to enter security for the stay of execution for any defendant bound as surety or indorser on the original debt, where the security is offered by the principal, unless the defendant assents in proper person

or by writing, signed by him, and showing that the stayor is entered as such at his instance and request.'' Code, Shannon, sec. 4788.

Further: By section 4789, one who becomes stayor at the instance of the principal defendant is liable before the surety. *Chaffin* v. *Campbell*, 4 Sneed, 184; *Holt* v. *Davis*, 3 Head, 629.

While it was held in *Higgs* v. *Landrum*, 1 Cold., 81, that the justice, in entering the stay, should state specifically upon his docket how the fact was in respect of the assent of the surety and of its manifestation in proper person or by a writing signed by him, this decision has been explained to be merely directory on the point, and it was held that by Code, Shannon, section 4788, it was not intended, in order to validity, to require the justice to act only on the surety's application in person or signed written authorization; and that such official is authorized, notwithstanding the statute, to act on such evidence of assent on the part of the surety as satisfies him. *Gaut* v. *White*, 3 Baxt., 196.

When, therefore, the name of a stayor is entered broadly or without any such qualification, *prima facie* he is stayor for all parties; but he may be shown to be, in reality, the stayor of the principal only. *Woodward* v. *Walton*, 7 Heisk., 50. In the case before us it is admitted that Puckett did not become stayor in behalf of the sureties.

The court of civil appeals was of opinion: ''That complainant Puckett did not become bound as stayor

for anyone.  He had a right to say that he would stay
for certain parties only; and the justice of the peace
had no authority to enter his name for any other or
others than those he named.  True, he had no au-
thority to enter it as stayor for all the parties, as they
had not all consented, but that does not help the sure-
ties, as, under Puckett's directions, he had no au-
thority to enter it for less than all.  The result was
that he had no authority to enter it at all.  His effort
to render judgment against Puckett as stayor, con-
trary to the authority given him, was simply a nullity."

The argument of the court of civil appeals proceeds
upon the basis that the justice of the peace had no
authority to enter the name of Puckett as stayor for
all the judgment defendants, as they had not all con-
sented.  This confuses the sources of authority.  The
justice did have authority to so enter the name of
Puckett from Puckett himself, at the time given.  The
entry was in the form and to the effect intended by
Puckett, and therefore authorized.  The authority that
was lacking was that to Puckett from the sureties.  If
Puckett acted under a mistake or was misled as to the
persons for whom he was authorized to give the benefit
of his name in suretyship, that mistake was personal.
It was not known to the justice; nor did it operate as
an influence upon the judicial act when the justice
rendered the confessed judgment against Puckett as
stayor.

It does not follow that, if Puckett so lacked authority
from the sureties, the confessed judgment of stay fails

*in toto.* Authorities, supra. Any other rule would leave out of view the just rights of the judgment plaintiff and place it in the power of the judgment defendants and a stayor by collusion so to manipulate that such plaintiff would be subjected to the delay incident to a stay, without a countervailing firm assurance of the security supposedly augmented by the stay. The judgment plaintiff would bear the burden of delay and yet be permitted to be cheated of the only compensating benefit.

Another contention of complainant is that there was a fraud perpetrated by the principal judgment debtor, Cantrell, by way of misrepresentation, that induced his assent to stay the judgment, and that a court of equity should set aside the judgment of stay on that ground. This would bring up for consideration the interesting questions: (1) Whether any other than the judgment plaintiff in such confessed judgment may be the adverse party whose fraud could be complained of; and (2) whether the fraud of the principal judgment debtor, if admitted, could in any event be permitted to work a change, to their detriment, in the *status* of the sureties, not participating in the fraud, as fixed when the stay was entered by complainant. But other considerations determine the result of the cause, rendering a decision on these points unnecessary.

To justify a court of equity in setting aside for fraud a judgment at law, a complainant must show not only the fraud but also that it was unmixed by any fault

attributable to him, such as neglect or inattention. *Mc-Dowell* v. *Morrell*, 5 Lea, 279; *Maddox* v. *Apperson*, 14 Lea, 596. And this by reasonably clear and cogent proof.

The court of civil appeals did not base its decree on the ground of such fraud, if, indeed, it could have done so, in view of the fact that the principal judgment debtor did not even represent to complainant that he was authorized to speak for the sureties and request, as upon their authority, a stay in their behalf. The bill alleged only that Cantrell's representation to complainant was that it was the desire of the sureties that the judgment be stayed, and that complainant agreed to stay for all parties.

Going now, more particularly, to the other phase: Complainant did not make any effort to ascertain from the sureties whether they solicited him through Cantrell to become a stayor for them; and promptly, on learning of the situation developed by the broad entry of stay, the sureties were active to disaffirm, as we have seen above. Complainant, thus inattentive, has failed to show himself entitled to invoke the exercise of equity's power to set aside such a judgment as fraudulent. Writ of *certiorari* allowed; and decree here in accord.